## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**Rick S. Proctor**
    **Plaintiff,**

**vs.**

Case No.   2:16-cv-12264

**Branch Banking and Trust Company,**
    **Defendant.**

### COMPLAINT

COMES NOW the Plaintiff, Rick S. Proctor, (hereafter collectively the "Plaintiff") by

Counsel, and in complaint against the Defendants, alleges as follows:

1. On or about 2003, the Plaintiff obtained a loan from the Defendant in order to purchase

   land and construct a residence in Summersville WV.

2. The original loan amount was for approximately 20,000.

3. The Plaintiff worked on the project part time, while working full time under various

   federal grants on numerous projects.

4. In or about 2008, the Plaintiff refinanced the property to include a truck.

5. In or about 2008, the property appraised for approximately $122,000 even though it was

   unfinished and based on this appraisal and the loan was approved.

6. In or about 2011, the Plaintiff's grants ran out and he lost his employment with the

   nonprofit that was funded by federal government grants.

7. Thereafter, it was very difficult for the Plaintiff to find work, but he did manage to make

   his mortgage payments until about 2013, when BB&T granted him a mortgage

   modification that resulted in a higher interest rate, but slightly lower payment.

8. The Plaintiff made this payment for a short while but was unable to keep up.

1

9. The Plaintiff exhausted his 401k in order to keep up with the payments up until that point. Plaintiff also worked a minimum wage job from about May-December of 2013 to pay the mortgage.

10. In or about late 2014, the Plaintiff fell behind on the loan payments again.

11. Upon information and belief, the Defendant BB&T nor their agents Seneca Trustees or Samuel I. White, P.C. notified the Plaintiff of a pending foreclosure on his property.

12. BB&T sent the Plaintiff a letter stating that he had until January 30, 2015 to cure the loan or until a foreclosure sale took place.

13. In or about the summer of 2014 the Plaintiff filed a loss mitigation application with the Defendant BB&T.

14. At the same time, BB&T put the Plaintiff in loss mitigation.

15. Upon information and belief, the Defendant BB&T dual-tracked the Plaintiff by putting him in loss mitigation, but continuing with the foreclosure process, without telling the Plaintiff that the foreclosure process was ongoing.

16. Upon information and belief, the Defendant BB&T knew the property was under construction in May of 2014 that stated that the property was under construction and thus could not be abandoned.

17. On or about September 16, 2014, the Defendant BB&T did cause its agents to enter the Plaintiff's property and began destroying shrubbery around the Plaintiff's lot.

18. Further, one of the agents defecated in a toilet in one of the houses' toilet's despite the fact that there was no running water the house.

19. The agents further changed the locks, and did not provide the Plaintiff with a key.

20. The Plaintiff was living across the street in his parent's house at all times relevant to this complaint, and still lives there today.

21. The house was at all times listed as under construction with BB&T, and it was never abandoned.

22. The Plaintiff, on September 16, 2014, questioned the Defendant BB&T's agents about why they were there, and asked them to leave the property.

23. The agents told the Plaintiff that if they leave, they do not get paid, and they refused to leave or stop trespassing.

24. After, they changed the Plaintiff's locks, the bank never returned the Plaintiff's keys to the house until several years later when Plaintiff's attorney requested the key in a notice to cure letter.

25. Shortly thereafter, the Plaintiff emailed BB&T and requested the keys back, and never received them.

26. The Defendants BB&T and its agents put the Plaintiff's residence up for sale and at no point noticed the Plaintiff of the impending sale.

27. On or about October of 2014, the Plaintiff cures the arrearage, and the bank enters into negotiations for a mortgage modification.

28. In or about October of 2014, Plaintiff obtained stable employment and has retained it since.

29. Plaintiff kept the loan current through December of 2015, and he filed a loan modification application, which was approved.

30. Upon information and belief, the Defendant improperly failed to credit some of the Plaintiff's payments during this time period.

3

31. While the Plaintiff was in loss mitigation, BB&T continued to call the Plaintiff and tell him that he owed approximately $1,600 in delinquent payments.

32. BB&T would send letters saying Plaintiff owed $1,600.

33. Plaintiff called BB&T on two occasions to complaint about the calls and dunning letters, as they were in loss mitigation.  BB&T would confirm he was in loss mitigation, and that the letters and calls were automatically generated and to ignore them.

34. The phone calls and letters were very stressful.

35. Even after the loan modification was completed in or about May of 2015, the Plaintiff received a letter in December of 2015 stating he owed over $1,600 when he did not.

36. Upon information and belief, of the $800 plus in fees in the loan modification in the spring of 2014, numerous illegal fees were charged.

37. During this same time period, the Plaintiff called BB&T and requested the keys back to his property, and they never came.

38. In or about July of 2015, nearly a year after illegally changing the locks on Plaintiff's property, BB&T sent a letter to Plaintiff stating the keys would be mailed soon.  They never were.

39. In or about June of 2015, the Plaintiff mailed a letter to BB&T asking to please send him the keys to the residence.

40. On May 29, 2015, Andrea Hardy with BB&T called me and left a message that I should call her and leave a message of where to send the keys to the house as she would be out of town.

41. The Plaintiff called Andrea Hardy with BB&T on or about June 2 of 2015, about the keys and left an address of where to send the keys and he never received them.

4

42. The Defendant has for the past two years had numerous opportunities to return the Plaintiffs keys to his property and has refused to do so.

43. Plaintiff has been current on his loans for over a year.

44. After sending a 20 day notice to cure, requesting compensation for years without access to his property and return of the keys, BB&T sent a key in a non-descript envelope to Plaintiff's counsel.

45. Upon information and belief, Defendant retained all other keys that were made.

46. Defendant has made no other attempts to compensate the Plaintiff for all the time they denied him access to his property or to pay his attorney's fees.

47. The Defendants are illegally denying the Plaintiff access to the home the Plaintiff has owned for over a two years.

**COUNT I**

*VIOLATIONS OF THE WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT*

1. The Plaintiff incorporates the previous paragraphs as if fully set forth herein.

2. The Defendant has engaged in repeated violations of Article 2 of the *West Virginia Consumer Credit and Protection Act*, including but not limited to,

   a. Coming an unfair and deceptive act or practice by changing the locks on Mr. Proctor's residence without a valid legal reason do so in violation of *West Virginia Code* §46A-6-104;

   b. Failing to return Mr. Proctor's key in a timely fashion despite Mr. Proctor's request in a timely fashion in violation of *West Virginia Code* §46A-6-104;

   c. Causing damage to Mr. Proctor's property while illegally changing the locks in violation of *West Virginia Code* §46A-6-104;

5

      d. Failing to compensate Mr. Proctor adequately for the attorney's fees and damages incurred from the failure to provide him with a key to his residence for two years in violation of *West Virginia Code* §46A-6-104.

3. As a result of the Defendant's actions, Plaintiff has suffered damages to his property, he has suffered mental stress and anxiety, he has been angered, and has lost the use an enjoyment of his property.

## COUNT II

### *COMMON LAW NEGLIGENCE*

4. The Plaintiff incorporates the previous paragraphs as if fully set forth herein.

5. Defendant negligently failed to train, supervise, monitor or otherwise control its employees to ensure that its employees did not violate the WVCCPA as alleged in Count I.

6. Defendant had a duty to ensure that the its employees did not lock Mr. Proctor out of his house without a legal right to do so.

7. As both a direct and proximate cause of the Defendant's actions, Mr. Proctor was denied the use and enjoyment of his property for two years.

8. As a result of the Defendant's actions, Plaintiff has been annoyed, inconvenienced, harassed, bothered, upset, angered, harangued and otherwise was caused indignation and distress.

## COUNT III

### *INTENTIONAL & NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS*

9. The Plaintiff incorporates the previous paragraphs as if fully set forth herein.

10. The following conduct of Defendant was atrocious, intolerable and extreme so as to exceed the bounds of decency:

a.  The Defendant denied the Plaintiff access to his residence for two years despite the Plaintiff paying all of his obligations to the Defendant and keeping the loan current;

b.  The Defendant changed the locks on the Plaintiff's residence without a legal right to do so in order to cause emotional distress to the Plaintiff.

c.  It is emotional distressful to a high degree to be locked out of the home you are building for two years by a party that does not have any right to do so and to be denied return of the key.

11. As a result of the Defendant's actions, the Plaintiff has suffered emotional distress.

12. As a result of the Defendant's actions, the Plaintiff has been annoyed, inconvenienced, harassed, bothered, upset, angered, harangued and otherwise was caused indignation and distress.

## COUNT IV

### *COMMON LAW INVASION OF PRIVACY*

13. The Plaintiff incorporates the previous paragraphs as if fully set forth herein.

14. The Plaintiff has, and have, an expectation of privacy to be free from individuals entering his property and changing the locks without a legal right to do so.

15. The acts of the Defendant in sending individuals to the Plaintiff's property and changing the locks and defecating in his toilet without running water damaged and harmed Plaintiff's right of privacy.

16. As a result of the Defendant's actions, the Plaintiff suffered emotional distress.

17. As a result of the Defendant's action, the Plaintiff has been annoyed, inconvenienced, harassed, bothered, upset, angered, harangued and otherwise was caused indignation and

distress and was denied access to his property.

## COUNT V

### *TRESPASS*

18. The Plaintiff incorporates the previous paragraphs as if fully set forth herein.

19. The Defendant did enter onto the Plaintiff's property without any legal right to do so and did change the locks and defecate in the toilet without running water.

20. The Plaintiff had not granted the Defendant permission to enter the property and do those things.

21. The Defendants were not operating under a foreclosure sale or any other court order giving them a right to enter Plaintiff's property.

22. As a result of the Defendant's actions, the Plaintiff suffered emotional distress.

23. As a result of the Defendant's action, the Plaintiff has been annoyed, inconvenienced, harassed, bothered, upset, angered, harangued and otherwise was caused indignation and distress and was denied access to his property.

## COUNT VI

### *CONVERSION*

24. The Plaintiff incorporates the previous paragraphs as if fully set forth herein.

25. The Defendant did enter onto the Plaintiff's property without any legal right to do so and did change the locks and defecate in the toilet without running water.

26. By doing so, the Defendant took the possession of the Plaintiff's property thus preventing him from the use an enjoyment of it and converting it for their own purposes.

27. The Plaintiff had not granted the Defendant permission to enter the property and do those things.

8

28. For a period of two years, the Defendant did convert the Plaintiff's key to his property and failed to return it to him.

29. The Defendant was not operating under a foreclosure sale or any other court order giving them a right to retain Plaintiff's key.

30. As a result of the Defendant's actions, the Plaintiff suffered emotional distress.

31. As a result of the Defendant's action, the Plaintiff has been annoyed, inconvenienced, harassed, bothered, upset, angered, harangued and otherwise was caused indignation and distress and was denied access to his property.

### DEMAND FOR RELIEF

Plaintiff demands from the Defendant:

a.   Actual damages for the violations of the WVCCPA as authorized by *West Virginia Code* §46A-5-101(1) for all such violations that occurred up to the date and time of the filing of this complaint;

b.   Statutory damages in the maximum amount authorized by *West Virginia Code* §§46A-6-106;

c.   Plaintiff's cost of litigation, including attorney fees, court costs and fees, pursuant to *West Virginia Code* §46A-5-104;

d.   The Plaintiff be awarded general damages for the Defendant's negligence as alleged in Count II of the Complaint;

e.   The Plaintiff be granted general damages and punitive damages for Defendant's conduct alleged in Count III, IV, V, and VI;

f.   The Plaintiff's debts be cancelled pursuant to *West Virginia Code* §46A-5-105; and

g.  Such other relief as the Court shall deem just and proper under the attendant

circumstances.

### PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE

**RICK S. PROCTOR**
BY COUNSEL

BY:    /s/ Benjamin M. Sheridan
   Benjamin M. Sheridan (# 11296)
   Daniel K. Armstrong (# 11520)
   *Counsel for Plaintiff*
   Klein & Sheridan, LC
   3566 Teays Valley Road
   Hurricane WV 25526
   (304) 562-7111
   Fax: (304) 562-7115

10